RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 12/7/11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| OSCAR JAMES,<br>      Plaintiff | CIVIL ACTION<br>SECTION "P"<br>1:08-CV-0918 |
| VERSUS | |
| CORRECTIONS CORPORATION OF<br>AMERICA, et al.,<br>      Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Oscar James ("James") on June 24, 2008 and amended on June 4, 2009 (Doc. 13). The named defendants are Corrections Corporation of America ("CCA")(operator of the Winn Correctional Center ("WCC") in Winnfield, Louisiana), Tim Wilkinson (warden of WCC), Tim Morgan (deputy warden of WCC), Angel A. Martin (deputy warden of WCC), Virgil Lucas (security chief at WCC), Hope Hartwell, Dr. Engleson, James LeBlanc (Secretary of the Louisiana Department of Public Safety), and Bobby Jindal (Governor of Louisiana).

In his original complaint, James moves for class certification, alleging specific instances, policies, and customs to show that WCC is overpopulated and inadequately staffed in violation of the agreement between CCA and the State of Louisiana, and the WCC staff (pursuant to policies and customs) uses excessive force against inmates, uses bodily restraints unreasonably and for

punitive purposes, uses chemical weapons against inmates unreasonably and unjustifiably, uses isolation arbitrarily and for punitive purposes, and fails to protect inmates from assaults by other inmates. James further alleges that defendants do not provide adequate medical care, mental health care, trained medical staff, medication, facilities and care for the mentally retarded and mentally ill, treatment for hearing and vision problems, dental care, substance abuse treatment, rehabilitation programs and counseling, and recreation, and deny inmates access to their families. James also alleges that defendants do not provide inmates at WCC with basic needs in nutrition, privacy, clothing, shoes, linens and laundry services, and do not provide inmates with access to counsel or the courts. For relief, James asks for class certification of his action with Michael Sampson[1] named as the class representative/guardian ad litem, injunctive relief, declaratory relief, costs, attorney fees, and general and equitable

---

[1] According to James' complaint (Doc. 1), Sampson is an inmate at WCC and one of the named plaintiffs. Because a lay person ordinarily does not possess the legal training and expertise necessary to protect the interests of a proposed class, courts usually will not certify a class represented by a pro se litigant. Ability to protect the interests of the class depends in part on the quality of counsel, and the competence of a layman representing himself is generally too limited to allow him to risk the rights of others. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975); Wright, Miller & Kane, Federal Practice and Procedure 2d: Civil § 1769.9, n.12. See also, Lightbourne, 118 F.3d at 425; McGrew, 47 F.3d at 161; Anderson v. Moore, 372 F.2d 747, 751 n.5 (5th Cir. 1967); McClain, 187 F.R.D. at 281; Washington v. CSC Credit Serv., Inc., 178 F.R.D. 95, 100 (E.D.La.), amended, 180 F.R.D. 309 (E.D.La. 1998).

relief. James contends he and all other putative plaintiffs have exhausted their administrative remedies.

James was subsequently transferred to the J. Levy Dabadie Correctional Center in Pineville, Louisiana. James then filed an amended complaint, contending that he, specifically, was denied adequate clothing and bed linens by Hartwell and was denied adequate dental care by Dr. Engleson.

The district judge dismissed as moot James' civil rights complaint "to the extent that it seeks injunctive and declaratory relief," since James was no longer incarcerated in WCC, and James' "claims for damages" were preserved.[2]

All defendants answered the complaint (Doc. 20, 30, 34) and filed a statement of issues for trial (Doc. 40). Defendants Wilkinson, Morgan, Martin, Lucas, Engleson and Hartwell filed a motion to dismiss the complaints for lack of exhaustion (Doc. 42). The motion to dismiss is now before the court for disposition.

## Law and Analysis

Defendants contend James' action should be dismissed for lack

---

[2] In response to defendants' motion for clarification of the judgment (Doc. 19), which asked whether the pleadings in the original complaint (Doc. 1) (which stated claims for a class action suit) were dismissed or whether they should answer both the original complaint and the amending complaint (Doc. 8)(which stated claims specific to James alone), the district judge denied the motion, stating "the issues should be explored via discovery and/or dispositive motion" (Doc. 29). Therefore, James' suit for a class action is still viable, albeit without the availability of declaratory or injunctive relief.

of exhaustion.

Section 1997e(a), as amended by the Prison Litigation Reform Act (PLRA), provides that "[n]o action shall be brought with respect to prison conditions under Section 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819 (2001). Also, Jones v. Bock, 549 U.S. 199, 211, 237 S.Ct. 910, 918-919 (2007); Days v. Johnson, 322 F.3d 863 (5th Cir. 2003); Clifford v. Gibbs, 298 F.3d 328, 330-331 (5th Cir. 2002); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). Resort to a prison grievance process must precede resort to a court. Porter, 534 U.S. at 529, 122 S.Ct. at 990. Compliance with prison grievance procedures is all that is required by the PLRA to properly exhaust. Jones, 549 U.S. at 218, 127 S.Ct. at 922-923.

Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. Jones, 549 U.S. at 216, 127 S.Ct. at 921. Where the complaint does not clearly show that the inmate failed to exhaust administrative remedies, it is defendants' job to raise and prove such an affirmative defense. Torns v. Mississippi Dept. of Corrections, 301 Fed.Appx. 386, 389-90 (5th Cir.2008).

In Louisiana, the prison grievance procedures are set forth in

the Louisiana Administrative Code, at LA ADC 22:I.325(G)(1), (2), as follows:

> 1. First Step (Time Limit 40 days)
>
> a. The inmate commences the process by writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought (refer to Subsection F, "Procedure-Initiation of Process" for the requirements of the letter). The inmate should make a copy of his letter of complaint and retain it for his own records. The original letter will become a part of the process, and will not be returned to the inmate. The institution is not responsible for furnishing the inmate with copies of his letter of complaint. This letter should be written to the warden within 90 days of an alleged event. (This requirement may be waived when circumstances warrant. The warden, or his designee, will use reasonable judgment in such matters.) The requests shall be screened by the ARP screening officer and a notice will be sent to the inmate advising that his request is being processed or is being rejected. The warden may assign another staff person to conduct further fact-finding and/or information gathering prior to rendering his response. The warden shall respond to the inmate within 40 days from the date the request is received at the first step.
>
> b. For inmates wishing to continue to the second step, sufficient space will be allowed on the response to give a reason for requesting review at the next level. There is no need to rewrite the original letter of request as it will be available to all reviewers at each step of the process.
>
> 2. Second Step (Time Limit 45 days)
>
> a. An inmate who is dissatisfied with the first step response may appeal to the secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening officer within 5 days of receipt of the decision. A final decision will be made by the secretary and the inmate will be notified within 45 days of receipt. A copy of the secretary's decision will be sent to the warden.
>
> b. If an inmate is not satisfied with the second step response, he may file suit in district court. The inmate must furnish the administrative remedy procedure number on the court forms.

To prove James did not exhaust his administrative remedies, the defendants provided an affidavit from Mona Heyse, the Quality Assurance Manager for WCC whose duties include the maintenance of ARP forms and files, including grievances (Doc. 42). Heyse states in her affidavit that WCC records show James filed five grievances at WCC, none of which concerned issues regarding the denial of clothing or blankets (Doc. 42, Ex. 1).

Defendants "records" are actually just computerized, one-to two line summaries of each grievance filed by inmates (the author of the summaries is not shown), instead of the grievances themselves. Certified copies of James' Administrative Remedy grievances are not attached to defendant's motion, nor are they located anywhere else in the record of this case. Since defendants have not established a foundation for submission of a summary of James' grievances instead of the grievances themselves, pursuant to F.R.E. rule 1006, Heyse's affidavit will not be considered insofar as it purports to summarize James' grievances.[3]

Heyse states in her affidavit that James did not exhaust his administrative remedies for denial of clothing or blankets; Heyse'

---

[3] In fact, defendants' computerized summaries of James' grievances show that James did not file any grievances concerning lack of adequate clothing and blankets, but exhausted his administrative remedies as to denial of dental care by filing two grievances concerning a toothache (Doc. 42, Ex. 1). Therefore, if the court were to consider the summaries, defendants would not be entitled to have their motion to dismiss granted, anyway.

affidavit does not address James' claim for denial of dental care. James claims he and the other plaintiffs exhausted their administrative remedies (Doc. 1). James contends in his original, verified complaint that he filed grievances for lack of programming, inadequate medical care, inadequate administrative remedy procedures, inadequate clothing, inadequate food, inadequate dental care, verbal abuse, unsanitary conditions, and lack of security and control, but that he did not receive responses to all of his grievances (Doc. 1).

Defendants have not carried their burden of proving that James failed to exhaust his administrative remedies. Therefore, defendants' motion to dismiss James' complaints for lack of exhaustion should denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion to dismiss be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District

Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 6th day of December, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE